<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

</div>

IN RE:

CARLOS F. GOMEZ                           CASE NO. 18-02707-5-DMW
                                          CHAPTER 11
     DEBTOR.

<div align="center">

**FIRST AMENDED PLAN OF REORGANIZATION**

</div>

Pursuant to the provisions of Section 1123 of the Bankruptcy Code (11 U.S.C. § 1123), the Debtor hereby submits the following First Amended Plan of Reorganization ("Plan"):

<div align="center">

**I.  SUMMARY OF PLAN**

</div>

The Plan contemplates a reorganization of the Debtor's obligations. In accordance with the Plan, the Debtor intends to satisfy creditor claims through income earned from his work at Coastal Engineering & Surveying, Inc., a North Carolina professional corporation owned solely by the Debtor. The Debtor's Plan of Reorganization is based on the Debtor's belief that the interests of his creditors will be best served if he is allowed to reorganize his debts.

The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment of each respective creditor. A list of the Debtor's liabilities as of the date of this Plan is attached hereto as **Exhibit A**.

The Plan changes 3 classes of creditors:

Class 4 Loancare: Contemplates a 12 month marketing period to sell the Debtor's residence commonly referred to as 46 Juniper Trail, Southern Shores, NC ("Property"). The Debtor will make payments to LoanCare during this time. If the Debtor is not able to sell the Property, the Debtor agrees to sell the Property via public auction.

Class 5 Wells Fargo: Wells Fargo shall retain its lien until the sooner of (i) the sale of the Property; or (ii) the Debtor receives his discharge.

Class 6 General Unsecured Creditors: The total amount of claims in this class is now estimated to be $358,893.51. The original Plan estimated unsecured claims to be $273,272.45. The bulk of this change is due to the Debtor estimating LoanCare's unsecured claim to now be $154,107.94 versus $71,010.38. In addition, on December 3, 2018, an Order Allowing Objection to Claim Numbers 7 and 8 of the United States Small Business Administration ("SBA") was entered denying SBA's claim. The Debtor's business, Coastal Engineering & Surveying, Inc., is still primarily liable for Claim Number 8 and will continue to make its regular payment. The claims of Gray & Lloyd, LLP, for $700.00 and Moss & Associates, PC, for $400.00 were purchased by the Debtor's daughter.

<div align="center">

-1-

</div>

## II. DEFINITIONS

**A.      Definitions and Defined Terms.** Unless the context otherwise requires and for purposes of the Plan and the accompanying Disclosure Statement, the following terms shall have the following meanings when used in capitalized form:

1.      "ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

2.      "ADMINISTRATIVE CLAIM BAR DATE" shall have the meaning set forth in Section V of the Plan.

3.      "ALLOWED" shall mean (a) any Claim against the Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

4.      "BANKRUPTCY CAUSES OF ACTION" shall mean any claim or cause of action which may be asserted by a Debtor or a debtor-in-possession under Sections 541, 542, 543, 544, 546, 547, 548, 549, 550, or 553 of the Code.

5.      "BANKRUPTCY CODE" or "CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended.  References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. §101, et seq.

6.      "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

7.      "CLAIM" shall mean a duly listed or a timely filed claim that is allowed in order to be paid by the Court.

8.      "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

9.      "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. §1129.

10.      "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. §1129.

11.      "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

12.     "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

13.     "CREDITORS" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demand or claims of any character whatsoever.

14.     "DEBTOR" shall mean the Debtor (or Debtors, if more than one) identified on the first page of this Plan.

15.     "DISBURSING AGENT" shall mean the Reorganized Debtor, attorney, or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

16.     "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with §1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

17.     "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

18.     "DISTRIBUTION DATE" shall mean the date on which distributions are to be made under the Debtor's Plan.

19.     "EFFECTIVE DATE" shall be that date on which the Order Confirming Plan becomes final and non-appealable.

20.     "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

21.     "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expires; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

22.     "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a priority claim, administrative claim, or secured claim.

23.     "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined in the Plan).

24.     "LITIGATION CLAIM" shall mean any Claim asserted against the Debtor, including those claims that are disputed, contingent, or unliquidated, arising out

of allegations of personal injury, wrongful death, property damage, product liability, tort claims, breach of contract claim, or similar theories of recovery for which coverage may exist under any insurance policy(ies) held by the Debtor.

25.     "NON-EXEMPT PROPERTY" shall mean the assets listed in Section V, paragraph E of this Plan.

26.     "PETITION DATE" shall mean the date upon which the Debtor filed the voluntary Chapter 11 petition.

27.     "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

28.     "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under §507.

29.     "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

30.     "REORGANIZED DEBTOR" shall mean the Debtor, as reorganized under the terms of this Plan and revested with the property which was formerly property of the estate, as provided by 11 U.S.C. § 1141(b).

31.     "SALE" shall mean the sale of certain assets of the Debtor under this Plan.

32.     "SALE PROCEEDS" means the proceeds of the Sale of certain assets of the Debtor under this Plan, after payment of all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions, and any other costs permitted under Section 506(c) of the Code).

33.     "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrances that have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

34.     "SUBSTANTIAL CONSUMMATION" shall mean the time the reorganized Debtor have commenced the distribution of initial Plan payments to all creditor classes.

35.     "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to §507(a)(8).

**B.     Other Defined Terms.** Capitalized terms not defined in this Plan shall have the meaning set forth in 11 U.S.C. § 101 of the Bankruptcy Code.

**C.     Rules of Interpretation.** For purposes of this Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" or "Sections" are references to Articles or Sections, as applicable, hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply; and (h) any immaterial effectuating provisions may be interpreted by the Debtor in a manner that is consistent with the overall purpose and intent of the Plan all without further Order of the Court.

**D.     Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of North Carolina, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate governance matters relating to the Debtor and/or the Reorganized Debtor, shall be governed by the laws of the State of North Carolina.

## III.  CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

**A.     Classification of Claims Generally.**  Pursuant to §§ 1122 and 1123 of the Bankruptcy Code, this Article represents the designation of Classes of Claims under the Plan.  A Claim is in a particular Class for the purposes of voting on, and receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, withdrawn, or otherwise determined by a Final Order before the Effective Date.  A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class.  Any Class of Claims that is not occupied as of the date of the Confirmation Hearing of the Plan by an Allowed Claim, or a Claim temporarily Allowed under Bankruptcy Rule 3018, and for which, on the Effective Date, there are no Disputed Claims in such Class pending, shall be deemed deleted from the Plan for all purposes.

**B.     Summary of Classification.**  The Plan includes the classification set forth and described in more detail below, which designates the Classes of Claims against the Debtor and specifies those that are Impaired or Unimpaired by the Plan and entitled to vote to accept or reject the Plan in accordance with § 1126 or deemed to reject the Plan:

| Class No. | Class | Impairment | Voting Rights |
|---|---|---|---|
| Class 1 | Administrative Claims and Expenses | Impaired | Entitled to Vote |
| Class 2 | Ad Valorem Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Unsecured Priority Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 4 | LoanCare | Impaired | Entitled to Vote<br><br>Secured Claim to Vote in Class 4<br><br>Unsecured Claim to Vote is Class 6 |
| Class 5 | Wells Fargo | Impaired | Entitled to Vote in Class 6 |
| Class 6 | General Unsecured Claims | Impaired | Entitled to Vote |

**C.     Voting of Claims.**  Each holder of an Allowed Claim in an Impaired Class of Claims shall be entitled to vote to accept or reject the Plan.

**D.     Acceptance by Impaired Classes**.  Each Impaired Class that will or may receive or retain property or any interest in property under the Plan shall be entitled to vote to accept or reject the Plan.  An Impaired Class shall have accepted the Plan if (i) the holders (other than any holder designated under § 1126(e)) of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the holders (other than any holder designated under §1126(e) of the Bankruptcy Code) of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**E.     Acceptance by Unimpaired Classes.**  Those Claims in Unimpaired Classes are conclusively deemed to have accepted the Plan pursuant to § 1126(f) and, therefore, are not entitled to vote to accept or reject the Plan.

**F.     Classification and Treatment of Classes.**  The Debtor classifies the following Classes of Claims, indicating whether said Class is Impaired or Unimpaired, and proposes the following treatment:

**Class 1 - Administrative Costs:**

(1)     _Description of Claims_.  Class 1 consists of claims for any cost or expense of administration pursuant to Sections 503, 506, and 507 of the Bankruptcy Code.

The following claims of professionals will be paid subject to Court approval:

Stubbs Perdue, Attorney for the Debtor        TBD

(2)    <u>Impairment</u>.   This class will be impaired.

(3)    <u>Treatment</u>.  Administrative costs and expenses approved by the Court shall be paid in cash and in full including accruals to date of payment within ten days from the Effective Date of the Plan or upon entry of an Order allowing such Administrative Claim, whichever is later, except that professional fees shall be paid in full upon entry of an Order allowing the same, or pursuant to any agreement between the Debtor and the holder of a Class 1 Allowed Claim.

In the event that funds are not available to pay such costs and expenses within ten (10) days of the Effective Date of the Plan, then each holder of such a claim that agrees to receive payments over time will receive payments from the Debtor until paid in full.  At the request of such administrative claimant, such amounts will be secured by collateral to be agreed upon by the Debtor and such administrative claimant.  The Debtor and such administrative claimant shall enter into a promissory note and security instrument to document such transaction.  Such claims remaining unpaid ten days following the Effective Date shall accrue interest at a rate of eight percent (8%) per annum.

### Class 2 – Ad Valorem Taxes:

(1)    <u>Description of Claims</u>.  Class 2 consists of claims for taxes owed by the Debtor to any city, county, or other municipality or taxing entity entitled to tax the property of the Debtor based upon the value of the property assessed.  The Debtor is unaware of any claims in this class.

(2)    <u>Impairment</u>.  This class will be unimpaired.

(3)    <u>Treatment</u>.  To the extent a claim is allowed in this class, the Debtor will pay claims in this class with quarterly payments over a period of five (5) years from the Petition Date.  Quarterly payments shall commence on the earlier of January 15, April 15, July 15, or October 15 following the Effective Date and shall continue quarterly thereafter, and shall include interest at the applicable rate imposed by the tax collector.

Ad valorem taxes for the current tax year may be treated as a prepetition claim and not as an administrative expense.  *See* <u>*In Re St. Lawrence Homes, Inc.*</u>, *Case No. 09-00775-8, Order dated July 28, 2010, citing* <u>*In Re Members Warehouse, Inc*</u>., *991 F.2d 116, 118-119 (4th Cir. 1993).*

### Class 3 – Priority Tax Claims:

(1)    <u>Description of Claims</u>.  Class 3 consists of claims against the Debtor for income taxes, withholding taxes, unemployment taxes and/or any and all other taxes levied or entitled to be levied against the Debtor by the Internal Revenue Service or the North Carolina Department of Revenue plus interest as allowed by law.  The Debtor is aware of the following claims in this Class:

| Creditor | Claim # | Amount |
|----------|---------|--------|
| IRS | 4 | $ 87,825.90 |
| NC DoR | 1 | $ 34,728.50 |

(2)    <u>Impairment</u>.  This class will be unimpaired.

(3)    <u>Treatment</u>.  To the extent a claim is allowed in this Class, the Debtor proposes the following treatment:

**Costs and expenses of administration**, if any, shall be paid in cash and in full including accruals to date of payment within thirty (30) days from the Effective Date.

**Unsecured priority tax claims**, if any, described in Section 507(a)(8) of the Bankruptcy Code shall be paid in full in quarterly installments over a period not exceeding five (5) years from the Petition Date and payments shall commence on the earlier of January 15, April 15, July 15, or October 15 following the Effective Date and shall continue quarterly thereafter, with interest at the statutory rate as of the Effective Date.  For feasibility purposes, the Debtor estimates the quarterly payments to the IRS to be $6,433.27 per quarter and to North Carolina Department of Revenue to be $2,543.87 per quarter.

In the event that the Debtor fails to timely make a required payment as to any claim of the North Carolina Department of Revenue ("Department"), then, subject to a ten (10) day right to cure following written notice of default from the Department, the Department shall be permitted to exercise any and all of its collection remedies under non-bankruptcy law as to any and all of its claims without further order of the Court.  The rights of the Department to setoff under 11 U.S.C. § 553 shall not be altered by the Plan or the confirmation order entered in this matter and are expressly reserved.  The claim of the North Carolina Department of Revenue is subject to adjustment on account of federal corrections, as required by N.C. Gen. Stat. § 105-130.20 (for corporations, LLCs and other entities) and N.C. Gen. Stat. § 105-159 (for individuals).  Notwithstanding any other provisions of the Plan and the confirmation order, the Department shall retain any and all statutory tax liens that may have arisen by operation of statute prior to the Petition Date, except to the extent that the treatment for the Secured Claimants in Class 4 expressly states that such tax lien will not be treated as secured or fully secured in the treatment for Class 4.  Absent such express language in the treatment for Class 4, any such lien may be ruled unenforceable by the Bankruptcy Court only upon the filing of a separate pleading and after notice and a hearing.

**Unsecured general tax claims,** if any, will be treated as provided below in the section relating to "General Unsecured Claims."

### <u>Class 4 – LoanCare:</u>

(1)    <u>Description of Debt</u>.  On or about, February 16, 2007, the Debtor executed a promissory note in the original principal amount of $505,800.00 in favor of Resource Bank ("Note").  The Note had a maturity date of March 1, 2037.  The Note is secured by a deed of trust recorded in the Dare County Registry in Book 1719, at Page 282, on real property

commonly referred to as 46 Juniper Trail, Southern Shores, NC ("Property"). Upon information and belief, LoanCare is the current servicer for the Note. Reference to Loan Care shall include the actual noteholder and any other agents/principals of the noteholder and LoanCare. LoanCare filed Claim Number 9 in the amount of $559,024.58.

Prior to and during this bankruptcy, the Debtor applied for a loan modification with LoanCare. On December 4, 2018, the Debtor was approved for a "Standard Modification Trial Period Plan Notice" that required the Debtor to make three payments of $4,478.60 on January 1, 2019, February 1, 2019, and March 1, 2019. The Debtor made these three payments early and received the final "Loan Modification Agreement" on February 11, 2019. The Loan Modification Agreement set the amount payable under the Note and Security Instrument to $574,107.94 with payments on $70,452.06 of this amount being deferred until February 1, 2037 at 0%. The remaining balance of $503,655.88 would bear interest at 4.810% beginning February 1, 2019. Pursuant to the Loan Modification Agreement would be $4,478.60 per month which was comprised of $3,489.41 for principal and interest and $989.19 for taxes and insurance escrow.

Based upon nearby sales and his knowledge of the area, the Debtor contends his Property is valued at $420,000.00. Accordingly, the Debtor has decided to reject the Loan Modification Agreement.

(2)    _Impairment_. This class will be unimpaired.

(3)    _Treatment_. The Debtor proposes to market the Property for a period of 12 months from the Effective Date ("Marketing Period"). If the Debtor (i) is unable to procure a signed contract for the purchase of the Property, which sale must close within 14 months of the Effective Date and be agreeable to LoanCare, or (ii) defaults on the conditions below, the Debtor shall immediately cause the Property to be sold via public auction. The Debtor's right to the Marketing Period is subject to the following conditions:

a.    Beginning on the 15th of the first full month following the Effective Date, the Debtor shall make payments to LoanCare of $4,478.60 per month which was comprised of $3,489.41 for principal and interest and $989.19 for taxes and insurance escrow.

b.    LoanCare reserves its right to credit bid at the public auction.

c.    LoanCare and the Debtor shall agree to an auctioneer to sell the Property. If the Debtor and LoanCare cannot agree to the selection of an auctioneer, the Bankruptcy Court shall retain jurisdiction to decide the matter.

d.    If the auction results in a winning bidder or bidders, the high bidder(s) shall have 30 days from the auction date to close the sale(s). LoanCare shall be entitled to prompt distribution of all net proceeds of any auction sale that it approves to the extent necessary to satisfy its claim against the Debtor in full, including all legal fees and costs. "Net proceeds" is defined as the gross sale proceeds for the assets sold, minus: (a) auctioneer commission and/or fees and costs approved by the Debtor and LoanCare and/or the Bankruptcy Court, if necessary; (b) reasonable and customary closing costs

approved by the Debtor and LoanCare and/or the Bankruptcy Court, if necessary; and (c) any outstanding real property taxes that must be paid at closing in order to convey clear title to the purchaser(s) ("Net Proceeds").  No other deductions from gross sale proceeds of a private sale shall be allowed in the calculation of Net Proceeds unless and until the Debtor and LoanCare agree upon the same, or in the event they cannot agree, then either party may submit the proposed additional deductions to the Bankruptcy Court for consideration.

e.    If there are Net Proceeds remaining after payment of the above, these proceeds shall be immediately paid to Wells Fargo for its Class 5 Claim.

f.    To the extent that the Debtor and LoanCare are unable to reach a consensus to any terms outlined herein, either party shall be permitted to seek an expedited hearing on any such challenge or request; provided, however, that such hearing shall not occur on less than three business days' notice to all parties in interest.

g.    LoanCare's unsecured claim shall be limited to the lesser of (i) its claim less Net Proceeds from the private or public sale; or (ii) if LoanCare rejects a private sale and the public auction produces less Net Proceeds, LoanCare's unsecured claim will be its claim less the proceeds it would have received from the private sale.

h.    The balance of LoanCare's claim shall be treated in Class 6.  For feasibility purposes, the Debtor has estimated that LoanCare has a claim of $574,107.94 which is comprised of a secured claim of $420,000.00 and an unsecured claim of $154,107.94.

i.    LoanCare shall file an amended claim with the Bankruptcy Court within 30 days of receiving the Net Proceeds from the sale of the Property.  If LoanCare fails to file an amended claim with the Bankruptcy Court within 30 days of receiving the Net Proceeds from the sale of the Property, LoanCare will be deemed to have waived its unsecured claim and it shall be $0.00.

This sale of the Property shall be sold free and clear of all liens, encumbrances, claims, interests, or other obligations.  No further motions related to the sale of this Property shall be required; provided however, the Debtor may file such motions and seek such orders to the extent needed to provide reasonable comfort or accommodation to the purchaser(s) or title insurance companies to the extent needed or requested.  Additional information on the free and clear sale is found in Section V. Means of Implementation and Execution of Plan.

**Class 5 – Wells Fargo:**

(1)    <u>Description of Debt</u>.  On or about, November 2, 2007, the Debtor executed a Prime Equity Line of Credit Agreement with a maximum principal amount of $150,000.00 in favor of Wachovia Bank, N.A. ("Note").  The Note had a maturity date of November 1, 2037. The Note is secured by an open ended deed of trust recorded in the Dare County Registry in Book 1750, at Page 126, on real property commonly referred to as 46 Juniper Trail, Southern Shores, NC ("Property").  Upon information and belief, Wells Fargo, N.A., is the current holder of the Note.  Wells Fargo filed Claim Number 3 in the amount of $146,394.09.

(2)    Impairment.  This class will be impaired.

(3)    Treatment.  This claim shall be treated as an unsecured claim in Class 6 below and Wells Fargo's vote shall be included in Class 6.  Wells Fargo shall retain its lien until the Debtor receives his discharge or the Property is sold free and clear of liens.  Within 60 days of the Debtor's Discharge or the sale described in Class 4, Wells Fargo shall cancel its lien on this Property.  If Wells Fargo fails to cancel its lien, the Debtor shall be authorized to use the Order Confirming Plan to cancel this lien with the Dare County Registry.

If Wells Fargo receives any distribution from the sale of the Property, it will file an amended claim with the Bankruptcy Court within 30 days of receiving the Net Proceeds from the sale of the Property.  Further, if Wells Fargo fails to file an amended claim with the Bankruptcy Court within 30 days of receiving any Net Proceeds from the sale of the Property, Wells Fargo will be deemed to have waived its remaining unsecured claim and it shall not receive any further unsecured distributions from that point forward.

**Class 6 – General Unsecured Creditors:**

(1)    Description of Class.  This class consists of all allowed, undisputed, non-contingent, unsecured claims and deficiency claims listed in the Debtor's petition or as otherwise approved by the Court.  The total of claims in this class as of the filing of this Plan is estimated to be $358,893.51.

(2)    Impairment.  This class will be impaired.

(3)    Treatment.  The Debtor shall pay the holders of claims in this Class a total of $50,000.00 to be paid pro rata at $2,500.00 per quarter for 20 quarters.  The first payment shall be on the 15th day of the 1st full month following the Effective Date.  At the time of the filing of this Plan, the Debtor estimates the following payment schedule:

| Class 6: GENERAL UNSECURED CLAIMS | Clm | Impaired | $358,893.51 | $50,000 paid pro rata Approximate total payment over 5 years | Approximate payment @ $2,500 per quarter for 20 quarters (5 years) |
|---|---|---|---|---|---|
| Bank of America #6317 | | | $25,905.00 | $3,609.01 | $180.45 |
| BB&T #2676 | | Unknown Disputed | $0.00 | $0.00 | $0.00 |
| Department of Education #0513 | | | $7,325.00 | $1,020.50 | $51.02 |
| Navient #9537 | 2 | | $7,696.31 | $1,072.23 | $53.61 |
| New Dixie Oil Corporation | | $376,843.63 Disputed | $0.00 | $0.00 | $0.00 |
| OB Gas, L.L.C. | | Unknown Disputed | $0.00 | $0.00 | $0.00 |
| Outer Banks Emergency Dept. #9800 | | | $391.00 | $54.47 | $2.72 |

| | | | | | |
|---|---|---|---|---|---|
| Small Business Administration #024B | 7 | Order Denying Claim DE-72 | $0.00 | $0.00 | $0.00 |
| Small Business Administration #024B | 8 | Order Denying Claim DE-72 | $0.00 | $0.00 | $0.00 |
| U.S. Bank, NA dba Elan Financial | 5 | | $2,648.50 | $368.98 | $18.45 |
| US Department of Education #3747 | | | $2,634.00 | $366.96 | $18.35 |
| US Department of Education #9997 | | | $1,629.00 | $226.95 | $11.35 |
| Wells Fargo #1886 | 6 | | $6,032.94 | $840.49 | $42.02 |
| Class 4 Loan Care Unsecured Claim | | estimated | $154,107.94 | $21,469.87 | $1,073.49 |
| Class 5 Wells Fargo Unsecured Claim | 3 | | $146,394.09 | $20,395.20 | $1,019.76 |
| IRS Unsecured Claim | 4 | | $4,129.73 | $575.34 | $28.77 |
| | | | | $50,000.00 | $49,999.80 |

The Debtor shall pay LoanCare's pro rata share his counsel to be held in trust until after the proposed sale of 46 Juniper Trail, Southern Shores, NC ("Property") in Class 4 occurs and LoanCare's unsecured claim can be determined. Once LoanCare's unsecured claim is determined, the Debtor shall recalculate each unsecured creditor's pro rata share and the associated payments from that date forward to insure each unsecured creditor receives its pro rata share. If the payment changes, the Debtor will send notice of its calculations to each unsecured creditor with the next revised payment.

The Debtor does not anticipate the sale of the Property to pay any proceeds to Wells Fargo for its Class 5 Claim. However, if the sale of the Property does produce proceeds that are paid to Wells Fargo, the Debtor shall recalculate each unsecured creditor's pro rata share and the associated payments from that date forward to insure each unsecured creditor receives its pro rata share. If the payment changes, the Debtor will send notice of its calculations to each unsecured creditor with the next revised payment.

## IV.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as otherwise specified in this Plan, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor. The Debtor hereby assumes all leases currently in effect in which the Debtor is the lessor, except as may be otherwise specifically stated herein.

Any person with a Claim arising from such rejection shall be deemed to hold a general

unsecured claim and shall file a proof of claim within thirty (30) days of the Effective Date or be forever barred from asserting any Claim relating to such rejection.

## V.  MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

A.      The Debtor proposes to make payments under the Plan from income earned from his business and cash on hand.

B.      <u>Authority of the Reorganized Debtor</u>.  The Reorganized Debtor shall have the authority to implement any term or provision of this Plan.  To the extent that any right is granted to the Reorganized Debtor under the Plan, then the Reorganized Debtor shall have authority for so long as he is in existence to carry out any and all acts necessary to fulfill the terms of the Plan.  Any authority granted to the Debtor pursuant to the Plan shall be construed as authority granted to the Reorganized Debtor.

C.      <u>Continuance of Business Operations</u>.  The Reorganized Debtor shall continue any business operations which he may be engaged.

D.      <u>Post-Effective Date Operations</u>.  From and after the Effective Date, the Reorganized Debtor may operate his business and manage his financial affairs, and use, acquire, sell, transfer, convey, or dispose of property, and settle and compromise Claims or Interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Specifically, the Reorganized Debtor shall no longer need approval from the Bankruptcy Court, the Bankruptcy Administrator, or any trustee, in order to undertake any transaction for which Court approval was needed pursuant to Sections 363 or 364 of the Bankruptcy Code prior to the Effective Date, including but not limited to sales of real or personal property.

E.      Except as otherwise modified in the treatment for each Secured Creditor set forth in Article III, all other terms and conditions of any promissory note, security agreement, deed of trust, loan agreement, or other loan document held by a Secured Creditor, including all events of default (excluding cross default provisions unless expressly retained in Article III of the Plan) shall remain in force and effect as they were on the Petition Date.  However, no term or event of default that would create an immediate default due to the Debtor's existing bankruptcy filing or financial condition, or are inappropriate due to the existing bankruptcy or financial situation shall be enforceable.  The provisions of any security instrument that allow the Secured Creditor to foreclose on the collateral in the event of a default shall remain in effect.  Any affirmative financial covenants in any of the loan documents relating to the debt that do not relate to the preservation, protection, repossession or foreclosure of the collateral shall not be effective post-confirmation unless expressly provided for in Article III of the Plan.

F.      <u>Plan Default Remedies</u>:  Unless otherwise specified, all payments required under the Plan shall be subject to the following default and cure provisions:

1.      The Debtor shall have thirty (30) days from written notice of default to cure any alleged payment or non-monetary default; and

2.      If the Debtor fails to cure any such Plan obligation within the thirty (30) day period, the affected creditor shall be permitted to exercise all collection rights under applicable state law with respect to its Allowed Claim(s).

G.      <u>Cancellation of Liens</u>.  In the event the treatment provided for a Secured Creditor in Article III results in such creditor being treated as wholly unsecured, such creditor shall cancel its deed of trust or security instrument within thirty (30) days of the Effective Date.  In the event of non-compliance by the Secured Creditor, the Debtor proposes that the Confirmation Order will contain a provision directly cancellation of the specified lien.

H.      Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

I.      <u>Sale of 46 Juniper Trail</u>.  The Debtor shall be authorized to sell the real property commonly referred to as 46 Juniper Trail, Southern Shores, NC ("Property").  The Debtor may employ a broker to market and sell the Property without further order from the Bankruptcy Court.  The Debtor shall have 12 months to obtain a signed contract for the purchase of the Property, which sale must close within 14 months of the Effective Date.  LoanCare shall have the right to reject any contract brought to it by the Debtor.

If the Debtor (i) is unable to procure a signed contract for the purchase of the Property, which sale must close within 14 months of the Effective Date and be agreeable to LoanCare, or (ii) defaults on the conditions in Class 4, the Debtor shall immediately cause the Property to be sold via public auction.

LoanCare reserves its right to credit bid at the public auction.  LoanCare and the Debtor shall agree to an auctioneer to sell the Property.  If the Debtor and LoanCare cannot agree to the selection of an auctioneer, the Bankruptcy Court shall retain jurisdiction to decide the matter.  If the auction results in a winning bidder or bidders, the high bidder(s) shall have 30 days from the auction date to close the sale(s).  LoanCare shall be entitled to prompt distribution of all net proceeds of any auction sale that it approves to the extent necessary to satisfy its claim against the Debtor in full, including all legal fees and costs.  "Net proceeds" is defined as the gross sale proceeds for the assets sold, minus: (a) auctioneer commission and/or fees and costs approved by the Debtor and LoanCare and/or the Bankruptcy Court, if necessary; (b) reasonable and customary closing costs approved by the Debtor and LoanCare and/or the Bankruptcy Court, if necessary; and (c) any outstanding real property taxes that must be paid at closing in order to convey clear title to the purchaser(s) ("Net Proceeds").  No other deductions from gross sale proceeds of a private sale shall be allowed in the calculation of Net Proceeds unless and until the Debtor and LoanCare agree upon the same, or in the event they cannot agree, then either party may submit the proposed additional deductions to the Bankruptcy Court for consideration.  Any remaining Net Proceeds remaining after payment of the above shall be immediately paid to Wells Fargo for its Class 5 Claim.

If the Debtor and LoanCare are unable to reach a consensus to any terms outlined herein, either party shall be permitted to seek an expedited hearing on any such challenge or request;

provided, however, that such hearing shall not occur on less than three business days' notice to all parties in interest.

This sale of the Property shall be sold free and clear of all liens, encumbrances, claims, interests, or other obligations.  No further motions related to the sale of this Property shall be required; provided however, the Debtor may file such motions and seek such orders to the extent needed to provide reasonable comfort or accommodation to the purchaser(s) or title insurance companies to the extent needed or requested.

J.      Sale Free and Clear of Liens.  Any real and personal property owned by the Debtor that will be sold pursuant to this Plan will be sold free and clear of all liens, encumbrances, claims, interests, or other obligations.  In order to expedite the sale process, provide clear title to the properties sold, and satisfy certain anticipated requirements of title insurance companies providing title insurance to purchasers, the Debtor may seek to have the Court enter a separate free and clear order, which shall provide that all sales will be free and clear of all liens, interests, and other claims or interests; provided however, that.  No further motions related to the sales of property shall be required.

This Plan specifically contemplates the sale free and clear of real property commonly referred to as 46 Juniper Trail, Southern Shores, NC ("Property").  This property shall be sold free and clear of the following known encumbrances:

- Deed of Trust in favor of CIT Bank, N.A. (LoanCare, LLC is servicer) recorded in the Dare County Registry in Book 1719, at Page 282;
- Deed of Trust in favor of Wachovia Bank (now Wells Fargo Bank, N.A.) recorded in the Dare County Registry in Book 1750, at Page 126; and
- Any and all taxes, income taxes, real property taxes, or personal property taxes due and owing to any City, County, municipal corporation, or other taxing authority, including Dare County, the Town of Southern Shores, the North Carolina Department of Revenue, the North Carolina Department of Commerce, and the Internal Revenue Service.

K.      In the event the Plan proposes to sell any property free and clear of liens, Secured Creditors shall be required to sign lien releases to facilitate closing in a form and manner acceptable to the closing attorney.

L.      Distribution of Sales Proceeds.  Upon the sale of any real or personal property proposed to be sold by this Plan, the liens secured by such property shall attach to the net proceeds of sale remaining after payment of costs of sale and all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions, and any other costs permitted under Section 506(c) of the Code), and shall be paid to lienholders in accordance with the priorities of such liens, and then to other creditors in accordance with the priorities of the Code. In the event the net proceeds of sale are insufficient to satisfy all claims within a class, such proceeds to be distributed to such class will be distributed pro rata.  The Debtor may elect to file additional motions with the Court setting forth the proposed distribution of any excess sales proceeds prior to distribution to creditors.

M.    <u>Preservation of Right to Credit Bid</u>.  All secured creditors shall retain the rights granted to them under § 363(k) to purchase their collateral via a credit bid upon the same or better terms of the proposed purchaser.  In the event of a private sale which shall not satisfy the claim of the secured creditor(s) in full, the Debtor shall provide the secured creditor with a copy of the purchase contract in the manner designated by such creditor and such creditor shall have until no later than one hour before the Debtor's deadline for accepting such contract to inform the Debtor in writing whether it wishes to purchase the property via a credit bid upon the same or better terms than that offered by the purchaser.  In the event the creditor does not provide written notification to the Debtor that it will purchase the property by credit bid, the creditor shall be deemed to waive its right to credit bid.  Each secured creditor shall be responsible for providing the Debtor with information concerning the method by which it wishes to be notified to potential purchase contracts for purposes of credit bidding (i.e. fax, electronic mail, or telephonic notification).

N.    <u>Post-Confirmation Sales by the Reorganized Debtor</u>.  The Debtor may sell, transfer, or otherwise dispose of all or some of his assets at any time after the Effective Date that are not contemplated by the Plan.  In the event the Debtor sells all or substantially all of his assets before he has paid in full all Allowed Claims, then the Debtor shall pay in full the balance of any Allowed Claims at the closing of such sale or disposition of assets, or as soon thereafter as is practical.

O.    Prior to the sale or liquidation of any real or personal property called for by the Plan, the Debtor shall consult with his accountant to estimate the resulting taxes.  To the extent funds are available after the payment of liens, such amount, as determined by the CPA, shall be escrowed in an account set up by the Debtor prior to any distributions to other creditors called for by the Plan from such sales proceeds.  Taxes, such as income and capital gains taxes, resulting from such sales shall be paid from the account when the taxes are due.

P.    <u>Deficiency Claims Following Post-Effective Date Foreclosures</u>.  Each Secured Creditor who is entitled to foreclose on its collateral under the terms of the Plan after the Effective Date shall have 120 days after the Effective Date to complete the foreclosure of its collateral.  Each such creditor shall have 150 days following the Effective Date to file a proof of claim for any deficiency or be forever barred from asserting any deficiency claim and such obligation shall be deemed paid in full.  Such proof of claim shall include an itemization of the principal, interest, and other costs.  Any such deficiency claim shall be treated in the unsecured creditor class.  In the event the Debtor obtains his Final Decree prior to the determination of any deficiency claim, such secured creditor shall inform the Disbursing Agent of such deficiency claim within the same time period.  In such event, a proof of claim form shall not be required, but the secured creditor shall provide notice of such deficiency claim to the Disbursing Agent in a writing containing the same information required in a proof of claim.

Q.    <u>Deficiency Claims Following Pre-Confirmation Foreclosures or Repossession</u>.  Each Secured Creditor who conducted a sale of its collateral prior to the Effective Date who has not already filed a deficiency claim shall have 30 days after the Effective Date to file a proof of claim for any deficiency or be forever barred from asserting any deficiency claim and such obligation shall be deemed paid in full.  Such proof of claim shall include an itemization of the principal, interest, and other costs.  Any such deficiency claim shall be treated in the unsecured creditor class.  In the event the Debtor obtains his Final Decree prior to the determination of any

deficiency claim, such secured creditor shall inform the Disbursing Agent of such deficiency claim within the same time period. In such event, a proof of claim form shall not be required, but the secured creditor shall provide notice of such deficiency claim to the Disbursing Agent in a writing containing the same information required in a proof of claim.

R.     <u>Claims Paid by Third Parties</u>. To the extent a claim holder receives payment in full or in part on account of such claim from a party that is not the Debtor, such creditor shall, within two (2) weeks therefore, inform the Debtor of such payment, and such creditor's claim shall be reduced accordingly for purposes of distribution under the Plan.

S.     <u>Termination of Obligations</u>. Notwithstanding any provision of the Plan to the contrary, all obligations of the Debtor to holders of Allowed Claims in the Classes of Claims designed under the Plan cease and desist upon the payment of the full amount due to such Class under the Plan.

T.     Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

U.     All objections to claims, fee applications, and adversary proceedings will be filed with the Court within 60 days after the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

V.     <u>Procedure for Payment of Professional Fees</u>. Current Court approved professionals shall not be subject to the fee application process for services rendered post-confirmation in furtherance of implementation of the confirmed Plan.

W.     <u>Administrative Claims Bar Date</u>. The Confirmation Order will establish an Administrative Claim Bar Date for filing all Administrative Claims, which date shall be sixty (60) days from the Effective Date. Holders of Administrative Claims not previously Allowed by the Court by Final Order must submit proofs of Administrative Claims on or before such Administrative Claim Bar Date or be barred from doing so. Such request for an Administrative Claim must be made by motion (not by filing a proof of claim on Official Form B 410) and include an itemization of the amount of the claim, the basis for such claim, and if such claim is based on a writing, a copy of such writing. All Administrative Claims not previously Allowed by the Court by Final Order must be filed with the Court on or before the Administrative Claims Bar Date and served on counsel for the Debtor. Creditors required to file Administrative Claims who fail to do so by the deadline shall be forever barred, estopped, and enjoined from asserting such claim(s) against the Debtor. Notwithstanding the forgoing, Administrative Claims arising from services rendered by professionals approved by the Court pursuant to Section 327 of the Code must comply with the applicable guidelines established by the Bankruptcy Administrator for filing fee applications.

X.     The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

Y.     The Debtor shall take such other action as necessary to satisfy the other terms and

requirements of the Plan and the Bankruptcy Code.

Z.    Exemption from Transfer Taxes.  Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.  Each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of the Plan.

## VI.  PRESERVATION OF SECTION 506(c) CLAIMS

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Debtor shall have the right to seek recovery of the cost of maintaining and preserving any collateral or property.

## VII.  PRESERVATION OF CLAIMS AND AVOIDANCE ACTIONS

A.    Notwithstanding anything to the contrary in the Plan or Disclosure Statement, the provisions of the Plan, Disclosure Statement, or Order Confirming Plan shall not have and are not intended to have, any res judicata or collateral estoppel effect with respect to any causes of action that the Debtor may assert, regardless of whether and to what extent such causes of action are specifically described in the Plan or Disclosure Statement.  Unless any causes of action are expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order of the Court, all such causes of action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches shall apply so such causes of action upon or after confirmation of the Plan.  Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or Order Confirming Plan, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date.  This shall include, but is not limited to all pre-petition claims and any and all post-petition claims that they could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any Bankruptcy Causes of Action.  Finally, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. §542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

B.    Preservation of Avoided Transactions for the Benefit of the Estate.    All transactions avoided or otherwise set aside pursuant to Sections 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to Section 551 and applicable case

law.  Funds received from such transactions shall be distributed to creditors according to the priorities of the Code after payment of any and all litigation costs, fees, and expenses incurred in litigating or collecting on such recoveries and shall be treated as a Class 1 Claim.  In the case of any lien that has been avoided which encumbered certain properties of the Debtor and has since been avoided, the lien shall remain on the public record and shall remain an encumbrance upon the real property.  However, all distributions made towards such deed of trust shall be distributed not to the named beneficiary of such deed of trust, but shall instead be paid to the Disbursing Agent for distribution to creditors.

C.    Funds recovered as a result of such actions shall be applied first in reimbursement of any attorney's fees and costs of such actions, and then the remainder shall be the property of the Debtor.

D.    Non-core causes of action presently pending in state and/or federal court in which the Debtor is the plaintiffs may continue to be pursued by the Debtor at his sole option.

## VIII.  MODIFICATIONS

A.    <u>Modification and Satisfaction</u>.  The claims stated herein, by modification, Court Order, or other legally appropriate manner, may be modified throughout the course of payment under the Plan.  The Debtor, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust cancelled as a matter of record, by the Trustee, or by appropriate application to this Court, upon a showing that the full amount of the monthly payments were made by the Debtor.

B.    <u>Amendments and Modifications</u>.  The Debtor may alter, amend, or modify the Plan or any exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date and prior to "substantial consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, the Debtor may, under 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Interests under the Plan; *provided, however,* that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

C.    <u>Revocation of Plan</u>.  The Debtor has reserved the right to revoke and withdraw its Plan before the entry of the Confirmation Order.  If the Debtor revokes or withdraws his Plan, or if confirmation of the Plan does not occur, then, with respect to the Debtor, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, as the case may be, or any other person or prejudice in any manner the rights of the Debtor, as the case may be, or person in any further proceedings involving such Debtor.

## IX.    OTHER PROVISIONS

A.    <u>No Representations or Warranties Concerning Tax Attributes/Consequences</u>.  The Debtor makes no representations or warranties to any creditor of the Debtor concerning the tax consequences of confirmation of this Plan, the effect of this Chapter 11 case, or as to the status of tax attributes of the Debtor.

B.    <u>Transfer of Claims</u>.  Claims may be transferred and will be honored only in accordance with Bankruptcy Rule 3001.

C.    <u>Limitations on Notice</u>.  Following the Effective Date of the Plan, the Debtor shall no longer be required to serve or otherwise provide notice of any motions, applications, or other pleadings filed in this case on any creditor or claimant which has been paid in full and thus are no longer claimants, without the need for the Debtor to take any further action as to this matter.

D.    <u>Estimation of Claims</u>.  The Debtor may, at any time, request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim, or Disputed Claim asserted against the Debtor pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim, or Disputed Claim asserted against the Debtor, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims against the Debtor may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## X.  EFFECT OF CONFIRMATION

A.    Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Reorganized Debtor.

B.    <u>Retention of Properties</u>.  The Reorganized Debtor shall retain all property both real and personal, and tangible and intangible, subject to such future use or disposition as may be in the best interest of the Reorganized Debtor.

C.    <u>Injunction</u>.  As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, Debtor or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or

encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order.  Notwithstanding the foregoing, the Plan does not release or waive any claims that the Debtor may have against any party in interest.  This injunction shall not affect any creditor's ability to enforce rights against non-Debtor and non-Debtor's property.

D.    Waiver and Release.  Confirmation shall constitute waiver and release of the right to pursue litigation and causes of action against the Debtor, which release is supported by the requirements of this Plan and covenants contained herein.

E.    Binding Effect.  Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or interests including any Interest of such holder is impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a distribution under the Plan.

F.    Discharge of Claims.  Except as provided in the Plan, the rights afforded in and the payments and distributions to be made under the Plan shall discharge all existing debts and Claims of any kind, nature or description whatsoever against or in the Debtor or any of his assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.

## XI.  RELEASE OF TITLE TO PROPERTY

A.    Vehicles.  Upon the satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other property of this estate in bankruptcy for which the certificate of title is in the possession of the secured party, the secured party shall within ten (10) days after demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, execute a release of its security interest on the said title or certificate, in the space provided therefore on the certificate or as the Division of Motor Vehicles prescribes, and mail or deliver the certificate and release to the Debtor.  Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with the provision.  This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this Plan.  Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case.  The Debtor specifically reserves the right to file a motion to reopen this case under Section 350 of Title 11 of the United States Code to pursue the rights and claims provided for herein.

B.    Real Property.  Pursuant to N.C.G.S. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a creditor holds a properly secured mortgage, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable County a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to the Debtor.  The failure of any such party to comply with this section shall result in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by Section 45-36.9(c) of the N.C. General Statutes.

Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with this provision. This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this plan. Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case. The Debtor specifically reserves the right to file a motion to reopen this case under Section 350(b) of Title 11 of the United States Code to pursue the rights and claims provided for herein including all remedies for damages and attorney fees under applicable State and Federal statutes.

## XII.  PROVISIONS GOVERNING DISTRIBUTIONS

A.      <u>Delivery of Distributions in General</u>.  Distributions to holders of allowed claims shall be made:  (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or  (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B.      Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court.  Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.

C.      <u>De Minimis Distributions</u>.  No distribution of less than twenty-five dollars ($25.00) shall be required to be made to any holder of an allowed unsecured claim.  Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

D.      <u>Unclaimed Property</u>.  If any distribution remains unclaimed for a period of 90 days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim.  Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.

E.      All payments or distributions made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied first to outstanding interest and then to principal.  In the event that a creditor claims that it is entitled to costs and/or attorney's fees, such creditor must file a fee application with the Court and such costs and attorney's fees must be approved by the Court prior to such costs and attorney's fees becoming part of the creditor's allowed claim.

## XII.  SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, may be modified throughout the course of payment under this Plan.  The Debtor, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of

the monthly payments were made by the Debtor.

## XIII.  ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.      Each Impaired Class Entitled to Vote Separately.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.      Acceptance by a Class of Creditors.  Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more that one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.      Claimants Entitled to Vote.  Holders of impaired claims shall be entitled to vote if:

(1)      Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

(2)      Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3)      Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4)      Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D.      Confirmation Hearing.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.      Acceptances Necessary to Confirm the Plan.  At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Under § 1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class

member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F.    <u>Confirmation of Plan Without Necessary Acceptances</u>.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class.  In the event that any class votes against the plan, the Debtor hereby request and move the Court under the provisions of this Plan entitled "Cramdown," for confirmation pursuant to the "cramdown" provisions of § 1129(b) of the Bankruptcy Code.  In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1129(b)(2)(A).

## XIV.  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.  The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## XV.  APPLICATION OF PLAN PAYMENTS

A.    All payments made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest on a monthly basis according to the amortization schedule proposed for each creditor.  In the event that a creditor is entitled to costs and/or attorneys fees post-petition under Section 506(b) of the Code, such creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorneys fees becoming part of the creditor's allowed claim.  Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with Section 524(i).

B.    Confirmation of the plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the Debtor to the month in which they were made under the plan or directly by the Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. Section 524(i).

## XVI.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1.      To determine any and all objections to the allowance of claims and/or interests;

2.      To determine the payoff of any claim or the amount necessary to satisfy and release any and all liens;

3.      To order the release of any and all liens upon the payoff of any claim;

4.      To determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

5.      To determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

6.      To determine all controversies and disputes arising under or in connection with the Plan;

7.      To determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

8.      to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

9.      To determine such other matters and for such other purposes as may be provided for in the confirmation order;

10.     To determine all disputes regarding property of the estate;

11.     To establish and adjust procedures for the orderly administration of the estate;

12.     To determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

13.     To replace the Debtor-in-Possession with a Trustee for good cause shown.

## XVII.  MISCELLANEOUS PROVISIONS

A.      <u>Survival of Terms</u>.  The covenants, representations, and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B.      <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the

holders of claims and interests.

C.    <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder and the State of North Carolina.

D.    <u>Further Assurance</u>.  If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

F.    <u>Incorporation of Disclosure Statement</u>.  All the terms and conditions of the Disclosure Statement are incorporated herein by reference.

## XVIII.  DISCHARGE

The Confirmed Plan will not discharge any debt provided for in this Plan until the Court grants a discharge, unless the Plan treatment for such Claim is to specifically extinguish or otherwise eliminate such Claim (for example, Claims which the Plan asserts have already been satisfied shall be extinguished upon confirmation of the Plan and not upon entry of the Discharge).  The Court may grant the Debtor a discharge upon (i) completion of all payments under the Plan, (ii) prior to completion of all payments under this Plan upon them providing assurance that all payments will be made, e.g. adequate security interest provided to each class of creditors with payments remaining, or (iii) as otherwise provided in § 1141(d)(5).  Dawsey will not be discharged from any debt excepted from discharge under § 523, except as provided in Bankruptcy Rule 4007(c).  Upon entry of the discharge, the discharge will be fully effective against all Creditors regardless of whether they have voted to accept or reject the Plan and regardless of whether the Plan is confirmed by consent or by resort to the cramdown provisions of § 1129(b).  However, although no discharge may be entered until completion of all payments contemplated by the Plan, the Debtor will seek to have the case closed upon substantial consummation under § 1101(2).  Further, the Debtor will seek to have the case automatically re-opened pursuant to § 350(b) without the payment of a fee, upon the filing and service on all creditors and the Bankruptcy Administrator, of a Notice of Completion of Plan Payments and Request for Entry of Discharge, allowing all parties twenty (20) days to file a response.

(This space intentionally left blank.)

Respectfully submitted, this the 26 day of February, 2019.

<div style="margin-left: 50%;">

s/William H. Kroll
WILLIAM H. KROLL
N.C. State Bar No. 39149
wkroll@stubbsperdue.com
STUBBS PERDUE
9208 Falls of Neuse Road, Suite 201
Raleigh, North Carolina 27615
TEL:   (919) 870-6258
FAX:   (919) 870-6259
Attorney for Debtor

Carlos F. Gomez

</div>

IN RE CARLOS F. GOMEZ
CASE NO. 18-02707-5-DMW
FIRST AMENDED PLAN OF REORGANIZATION
EXHIBIT A: PLAN CLASSES & LIABILITIES

|  | Clm | Impairment | Amount | Estimated Monthly Payment / Notes |
|---|---|---|---|---|
| **Class 1: ADMINISTRATIVE CLAIMS** |  | **Unimpaired** |  |  |
| Stubbs & Perdue |  |  | TBD |  |
| **Class 2: AD VALOREM TAXES** |  | **Unimpaired** | $ - |  |
| Dare County |  |  | $ - | $ - |
| **Class 3: TAX CLAIMS** |  | **Unimpaired** | $ 122,554.40 |  |
| IRS | 4 | Priority | $ 87,825.90 | $2,144.42 |
| NC DoR | 1 | Priority | $ 34,728.50 | $847.96 |
| **Class 4: LOANCARE** | 9 | **Impaired** | $ 559,024.58 |  |
| 46 Juniper Trail Southern Shores, NC 27949 |  | Claim as of 2/11/19 | $ 574,107.94 | $4,478.60 |
|  |  | Secured | $ 420,000.00 | Sell within 12 months |
|  |  | Unsecured | $ 154,107.94 | See Class 6 |
| **Class 5: WELLS FARGO** |  | **Impaired** | $ 146,394.09 |  |
| 46 Juniper Trail Southern Shores, NC 27949 | 3 | Unsecured | $ 146,394.09 | See Class 6 |

| **Class 6: GENERAL UNSECURED CLAIMS** | Clm | Impaired | $358,893.51 | **$50,000 paid pro rata Approximate total payment over 5 years** |
|---|---|---|---|---|
| Bank of America #6317 |  |  | $25,905.00 | $3,609.01 |
| BB&T #2676 |  | Unknown Disputed | $0.00 | $0.00 |
| Department of Education #0513 |  |  | $7,325.00 | $1,020.50 |
| Navient #9537 | 2 |  | $7,696.31 | $1,072.23 |
| New Dixie Oil Corporation |  | $376,843.63 | $0.00 | $0.00 |
| OB Gas, L.L.C. |  | Unknown Disputed | $0.00 | $0.00 |
| Outer Banks Emergency Dept. #9800 |  |  | $391.00 | $54.47 |
| Small Business Administration #024B | 7 | Order Denying Claim DE-72 | $0.00 | $0.00 |
| Small Business Administration #024B | 8 | Order Denying Claim DE-72 | $0.00 | $0.00 |
| U.S. Bank, NA dba Elan Financial | 5 |  | $2,648.50 | $368.98 |
| US Department of Education #3747 |  |  | $2,634.00 | $366.96 |
| US Department of Education #9997 |  |  | $1,629.00 | $226.95 |
| Wells Fargo #1886 | 6 |  | $6,032.94 | $840.49 |

| | | | |
|---|---|---|---|
| Class 4 Loan Care Unsecured Claim | estimated | $154,107.94 | $21,469.87 |
| Class 5 Wells Fargo Unsecured Claim | 3 | $146,394.09 | $20,395.20 |
| IRS Unsecured Claim | 4 | $4,129.73 | $575.34 |
| | | | $50,000.00 |